IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITIMORTGAGE, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) Civil Action No.: 11 C 1529 |
| v. | )<br>) |
| ABSOLUTE TITLE SERVICES, INC.;<br>STEVEN M. SHAYKIN; KALLIOPE<br>SHAYKIN; MICHAEL COLLINS; ERICA<br>VILLELLA; KIM SARNO; STEWART<br>TITLE GUARANTY COMPANY; and<br>NATIONAL LAND TITLE INSURANCE<br>COMPANY, | ) Suzanne B. Conlon, Judge<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

CitiMortgage, Inc. ("Citi") sues Absolute Title Services, Inc.; Steven M. Shaykin; Kalliope Shaykin; Michael Collins; Erica Villella; Kim Sarno; Stewart Title Guaranty Company ("Stewart Title"); and National Land Title Insurance Company ("National Land") (collectively, with Stewart Title, "the title insurer defendants"). Counts I, II, and III (out of 10) are against the title insurer defendants, alleging breach of contract (based on the title insurance policies) (Count I), breach of contract (based on the closing protection letters) (Count II), and seeking a declaratory judgment that the title insurer defendants are obligated to reimburse Citi for losses and damages sustained in connection with Counts I and II (Count III). The title insurer defendants move for summary judgment on Counts I, II, and III. For the reasons set forth below, the motion for summary judgment is denied.

**BACKGROUND**

Citi is a New York corporation authorized to do business in Illinois. Def. Facts ¶ 1.

Stewart Title is a Texas title insurance company, licensed to do business in Illinois. Def. Facts ¶ 3. National Land is an Illinois title insurance company and was a subsidiary of Stewart Title. Def. Facts ¶¶ 4, 5. Absolute Title Services, Inc. ("ATS") was an Illinois title and closing agency that was dissolved on February 11, 2011. Def. Facts ¶¶ 6, 7. Citi's underlying complaint involved mortgages held for four residential properties. Citi now asserts that disputes concerning three of these properties have been dropped, settled, or otherwise resolved.[1] The motion for summary judgment solely pertains to the property at 3905 Oak Avenue, Northbrook, Illinois ("Oak property").

On May 1, 2007, Vakhatang Tkhilishvili ("Tkhilishvili") financed the purchase of the Oak property with two mortgage loans. Pl. Facts ¶ 25. The first mortgage was in the amount of $650,000 from Countrywide Home Loans, Inc., d/b/a American Wholesale Lender, and the second was in the amount of $170,000 from Countrywide FSB (collectively, "the Countrywide mortgages"). *Id.* On October 1, 2007, Tkhilishvili obtained a refinance mortgage loan from ABN AMRO Mortgage Group, Inc. ("ABN AMRO") in the amount of $650,000. Pl. Facts ¶ 26. ATS acted as the title and closing agent for this transaction. Pl. Facts ¶ 11. Prior to closing, ABN AMRO sent ATS its closing instructions, which read, in part, "The Security Instrument being signed is to be first lien position." Pl. Facts ¶ 29.

---

[1] The underlying complaint involved mortgages held by Citi on the following properties: (1) 3905 Oak Avenue, Northbrook, Illinois ("Oak property"); (2) 6707 North St. Louis Avenue, Lincolnwood, Illinois ("St. Louis property"); (3) 3911 Medford Circle, Northbrook, Illinois ("Medford property"); and (4) 833 East Oakwood Boulevard, Chicago, Illinois ("Oakwood Boulevard property"). Citi informs the court that it is no longer pursuing its claims as to the Medford property and that the parties have reached a settlement regarding the St. Louis property. Citi asserts the title insurer defendants have represented that they will be able to establish the priority of Citi's mortgage for the Oakwood Boulevard property and Citi has agreed to cooperate to resolve that dispute amicably.

As this point, National Land was a party to a title insurance underwriting agreement with ATS. Pl. Facts ¶ 27. Under this agreement, ATS was a non-exclusive issuing agent authorized to issue National Land title polices in certain regions.[2] *Id.;* National Land/ATS Title Insurance Underwriting Agreement. On November 14, 2007, National Land underwrote ABN AMRO's loan policy of title insurance for the Oak property ("Oak property policy"). Def. Facts ¶ 16. The Oak property policy, in relevant part, provided indemnity against loss or damage by reason of defect in lien or encumbrance on the title. Def. Facts ¶ 17; Loan Policy of Title Insurance No. 9502-6218 at 1.

The parties currently before the court agree that ATS was required at closing to disburse from escrow the ABN AMRO mortgage loan to pay, satisfy, and release the Countrywide mortgages.[3] Pl. Facts ¶ 30. Citi alleges that, instead of properly paying off the prior mortgages, ATS took the funds loaned by ABN AMRO and paid them to associates of ATS managers and other undisclosed recipients. Compl. ¶ 20. ATS' failure to pay off the Countrywide mortgages rendered the ABN AMRO mortgage a third mortgage, subject to the prior Countrywide mortgages.

---

[2] The title insurer defendants dispute whether "issuing agent" is the proper title for ATS' relationship with National Land. Defs. Resp. to Pl. Facts ¶ 27. The court finds the "issuing agent" terminology is supported by the Title Insurance Underwriting Agreement between the two parties, which appoints ATS as "a non-exclusive agent . . . to issue [National Land] title policies." National Land/ATS Title Insurance Underwriting Agreement.

[3] The title insurer defendants and Citi are united in their belief that ATS violated the law. In fact, the title insurer defendants currently seek a number of remedies against ATS in a separate civil action in the Circuit Court of Cook County, Chancery Division, based on similar facts. Pl. Facts ¶ 32. For purposes of considering the motion for summary judgment, the court accepts the parties' agreed-upon facts regarding ATS' alleged activities. However, in doing so, the court in no way intends to establish these facts for purposes of any present or future claims involving ATS.

3

Def. Facts ¶ 30.

At some undisclosed point, the ABN AMRO Oak property loan was assigned to Citi. Def. Facts ¶ 26. Citi and other lenders are currently parties to a mortgage foreclosure action pending in the Circuit Court of Cook County, Illinois. Def. Facts ¶ 18. When this summary judgment motion was filed, there had been no adjudication of the foreclosure, lien priority, deficiencies or distributions of sale. Def. Facts ¶ 19. The title insurance defendants have yet to resolve Citi's claim based upon the Oak property policy.[4]

## DISCUSSION

### I. Summary Judgment Standard

In considering the motion for summary judgment, all facts and reasonable inferences are viewed in the light most favorable to Citi. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate if the record evidence reveals no genuine issue of material fact and the title insurer defendants are entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010). The title insurer defendants bear the initial burden of showing they are entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the title insurer defendants are able to satisfy this burden, the burden shifts to Citi to go beyond the pleadings and present specific facts demonstrating the existence of a genuine issue for trial. FED. R. CIV. P. 56(e)(2); *Kramer v. Vill.*

---

[4] Citi asserts that it filed a claim pursuant to the Oak property policy on April 2, 2009. Pl. Facts ¶ 34. The title insurer defendants dispute this statement, noting that Citi's insurance claim was addressed to ATS, even though the Oak property policy required that the claim be directly addressed to National Land. Def. Resp. to Pl. Facts ¶ 34. Beyond contesting this fact, the title insurance defendants do not argue that Citi's alleged failure to properly file its claim has any bearing on the matter currently before the court.

4

*of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). If the evidence is sufficient to support a reasonable jury verdict in Citi's favor, there is a genuine issue of material fact. *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001).

## II. Breach of Contract – Title Insurance Policies

Count I alleges that in failing to cure, pay, or settle the claims tendered by Citi, the title insurer defendants have materially breached the Oak property policy. Compl. ¶¶ 66 - 74. The Oak property policy provides that, "[w]hen liability and the extent of damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days." Loan Policy of Title Insurance No. 9502-6218 at 5 (emphasis added). The title insurer defendants argue that Citi's claim is not ripe for adjudication, on account of the pending foreclosure proceeding. In doing so, the title insurer defendants urge that the "definitely fixed" language indicates that Citi's claims need not be paid until the priority of liens is conclusively determined.

The title insurer defendants claim their proposed reading is supported by a number of Seventh Circuit decisions. *See Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995) (applying Pennsylvania law); *Grinnell Mut. Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995); *Travelers Ins. Co. v. Penda Corp.*, 974 F.2d 823, 833 (7th Cir. 1992); *Lear Corp. v. Johnson Electric Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003). The title insurer defendants acknowledge that none of these decisions address the issue currently before the court: a title insurer seeks to avoid a breach of contract claim regarding a title insurance policy pending the resolution of a foreclosure proceeding. The title insurer defendants are correct that the cited Seventh Circuit cases–with the exception of *Nationwide Ins.*, which applies Pennsylvania

5

law–demonstrate the general principle that "Illinois treats arguments about the duty to indemnify as unripe until the insured has been held liable." *Grinnell Mut. Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995). However, that principle does not apply here. Each of the cited decisions involved third-party insurance, purchased by an insured from an insurer for protection against the claims of another party. This case deals with first-party insurance. The insured is to be paid by the insurer in the event of a loss. Here, there is no controversy regarding Citi's liability to a third party.

The Seventh Circuit addressed a similar situation in *Citicorp Savings of Illinois v. Stewart Title Guaranty Company*, 840 F.2d 526 (7th Cir. 1988). There, a home buyer executed a mortgage securing a note for the majority of the home's purchase price. *Id.* at 528. The title insurance company issued an insurance policy to the seller of the house, insuring against the invalidity or unenforceability of the property lien securing the buyer's note. *Id.* at 528 - 529. The mortgage and note were assigned to Citicorp, which later learned that the buyer had been adjudicated incompetent many years earlier, rendering the mortgage voidable. *Id.* at 529. When Citicorp notified the title insurance company of the apparent policy breach, the title insurance company attempted to transfer the title of the deed to Citicorp to satisfy its obligations under the policy. *Id.* At that point, the deed was worth far less than the original $27,000 loan amount. *Id.* The Seventh Circuit determined that Citicorp was entitled to $27,000 in damages, noting that the role of a title insurance company is to use its expertise to protect against title "surprises." *Id.* The court further noted that if Citicorp had been aware of the voidability of the mortgage, it surely would not have extended the loan; that is, the loan was granted only because the title

insurance company promised Citicorp would have an enforceable lien on the mortgaged property. *Id.*

Prior to closing on the loan, ABN AMRO (Citi's assignor) presented ATS (the title insurer defendants' issuing agent) closing instructions that read, in part, "AS CLOSING AGENT, YOU ARE TO COMPLY WITH OUR CLOSING INSTRUCTIONS AND HANDLE ALL OF THE DETAILS OF THIS TRANSACTION SO THAT OUR FIRST LIEN INTEREST IS FULLY PROTECTED . . . The Security Instrument being signed is to be first lien position." Master Closing Instructions at 2, 4. The title insurance defendants subsequently issued a loan policy of title insurance, covering any defects in, or liens or encumbrances on, the title. Loan Policy of Title Insurance No. 9502-6218 at 1. Like Citicorp's assignor in *Citicorp Savings of Illinois v. Stewart Title Guaranty Company*, Citi's assignor in this case, ABN AMRO, extended the loan on the promise that the loan would be secured by a valid lien on the Oak property. The court finds *Citicorp Savings of Illinois v. Stewart Title Guaranty Company* to be persuasive. There, the Seventh Circuit clearly found Citicorp's losses–and Stewart Title's liability–as "fixed" at the time of the loan, when the decision to approve the loan was based on the mistake of the title insurer.

Ultimately, however, the decision on the title insurers' summary judgment motion rests upon their burden to show they are entitled to judgment as a matter of law, as well as established Illinois principles of construing insurance policies.[5] Where the language in an insurance policy is

---

[5] Because this is a diversity action, the court applies the laws of the forum state, including its choice of law rules. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *Klaxon v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941). Under Illinois choice of law rules, the court looks to the laws of the state where the policy was issued to provide the rules for interpreting the insurance policy. *U.S. Fire Ins. Co. v. Beltmann N. Am. Co.*, 883 F.2d 564, 566 (7th Cir. 1989). It is

clear, the court will give it its plain and ordinary meaning. *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 361 (7th Cir. 1987). However, if the words used in an insurance policy are susceptible to multiple meanings, they will be construed strictly against the insurer that drafted the policy. *Rich v. Principal Life Ins. Co.*, 875 N.E 2d 1082, 1090 (Ill. 2007). Questions of contractual ambiguity are resolved by the trier of fact. *Continental Cas. Co. v. Northwestern Nat. Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).

The title insurance defendants' interpretation of the "definitely fixed" language is plausible and finds some support in *Falmouth Nat'l Bank v. Ticor Title Ins.*, 920 F.2d 1058, 1065-66 (1st Cir. 1990) (applying Massachusetts law). However, the meaning of the "definitely fixed" language is ambiguous and has been controverted by Citi. As drafters of the title insurance policy, the title insurer defendants were in a position to clearly state whether, in the case of a superior lien, indemnification was only to occur following the culmination of foreclosure proceedings. Because the policy language is susceptible to interpretations other than that presented by the title insurer defendants, summary judgment must be denied.[6]

### III. Counts II and III

---

undisputed that Illinois law applies.

[6] In its opposition to the motion for partial summary judgment filed February 27, 2012, Citi unilaterally and tardily attempts to present a cross-motion for summary judgment on Count I. Pl. Opp. to Def. Mot. for Partial Summ. J. at 5, 9. The court's scheduling order, dated June 7, 2011, set a deadline of February 6, 2012 for all dispositive motions. *See* Dkt. 33. A response to a motion for summary judgment is not the appropriate avenue for filing a cross-motion for summary judgment. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 607 (7th Cir. 2006) ("In the context of summary judgment, we have held strict enforcement of Local Rule 56.1 is 'justified in light of the district court's significant interest in maintaining the integrity of its calendar.'") (*quoting Wienco, Inc. v. Katahn Assocs., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992)). It is telling that Citi has failed to seek leave to file a summary judgment motion or to comply with the requirements of Local Rule 56.

The title insurer defendants seek summary judgment on Citi's claim under Count II, which alleges a breach of contract based on closing protection letters[7] allegedly issued by the title insurer defendants. Compl. ¶¶ 75-81. As noted earlier, Citi's claims not related to the Oak property have been dropped, settled, or otherwise disposed of. *See supra* note 1. The motion for summary judgment does not challenge, or otherwise address, the CPL associated with the Oak property. Consequently, there is no basis for summary judgment on Count II.

Count III overlaps with Counts I and II, as it seeks a declaratory judgment that the title insurer defendants are obligated to reimburse Citi for its losses and damages sustained in connection with their alleged breaches of the title insurance policy and closing protection letters. Compl. ¶¶ 82-84. Once again, the court only considers the motion for summary judgment on Count III as it pertains to the Oak property. *See supra* note 1. The title insurer defendants do not present any arguments specific to Count III, presumably relying on the same arguments they present for Counts I and II. The title insurer defendants fail to establish they are entitled to judgment as a matter of law on losses incurred by Citi in connection with the Oak title insurance policy.

**CONCLUSION**

For the reasons set forth above, the motion for partial summary judgment is denied.

---

[7] The Illinois Title Insurance Act defines a closing protection letter as "an indemnification or undertaking to a party to a real property transaction, from a principal such as a title insurance company, setting forth in writing the extent of the principal's responsibility for intentional misconduct or errors in closing the real property transaction on the part of a settlement agent, such as a title insurance agent or other settlement provider." 215 ILCS 155/3.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

April 2, 2012